**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Nika Kvirkveliia,

Petitioner,

v.

Unknown Party, et al.,

Respondents.

No. CV-26-02956-PHX-AMM (ASB)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE ANGELA M. MARTINEZ, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is pro se Petitioner Nika Kvirkveliia's "Petition for Writ of Habeas Corpus" filed on July 9, 2026 ("Amended Petition"). (Doc 18.) The Amended Petition follows the Court's dismissal of his Petition for a Writ of Habeas Corpus filed on April 20, 2026. ("First Petition") (Doc. 1).

Petitioner was detained at San Luis Regional Detention Center in Arizona when his original Petition was filed and recently was transferred to the Otay Mesa Detention Center in California. (Docs. 1, 23.) He requests a bond hearing within 30 days and release from Immigration and Customs Enforcement ("ICE") if it is not held. (Doc. 18 at 2, 7.) For the reasons that follow, undersigned recommends the Amended Petition be granted in part.

## I. PROCEDURAL HISTORY AND BACKGROUND

On June 24, 2026, undersigned issued a Report and Recommendation summarizing the facts:

> Petitioner is a dual citizen of Russia and Georgia, with Georgian nationality, who arrived in the United States on August 6, 2024. (Doc. 1 at 3.) Petitioner arrived at the Calexico, California, Port of Entry through an appointment on the CBP One application. (*Id.*) Petitioner was categorized as an arriving alien and issued a Notice to Appear on the day of his arrival, August 6, 2024. (Doc. 1-3 at 2-5.) Petitioner was deemed subject to removal pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") as an "immigrant who, at the time of application for admission, is not in possession of a valid . . . entry document[.]" (*Id.* at 5.) Petitioner timely applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). (Doc. 1 at 3, Doc. 1-2 at 2-3, Doc. 13-1 at 2.)
>
> An immigration judge ("IJ") held a merits hearing on July 14 and July 22, 2025. (Doc. 1-2 at 2-3.) In her August 15, 2025 written decision, the IJ granted Petitioner's application for asylum from Georgia and held in abeyance his applications for withholding of removal and protection under the CAT. (*Id.* at 2-16.) The IJ denied Petitioner's application for asylum from Russia, denied his application of withholding of removal from Russia, and denied withholding and deferral of removal from Russia under the CAT. (*Id.*) The IJ ordered Petitioner be removed to Russia or, alternatively, to Georgia. (*Id.* at 16.)
>
> Petitioner filed an appeal of the IJ decision with the Board of Immigration Appeals ("BIA") on September 12, 2025. (Doc. 1 at 4.) Petitioner, through counsel, filed a brief with the BIA on February 18, 2026. (*Id.*) While the BIA appeal was pending, Petitioner filed [a] Petition in the United States District Court for the Southern District of California on April 20, 2026. (*See* Doc. 6 at 1.) On April 27, 2026, the action was transferred to the District of Arizona, because Petitioner was detained in Arizona when he filed his Petition. (*Id.*)

(Doc. 16 at 1-2.)

Based on the record before the Court, undersigned recommended dismissal of the First Petition without prejudice because it appeared that the order of removal became administratively final 90 days following the denial of his BIA appeal on May 26, 2026, and Petitioner had not alleged that there were pending appeals or stays of the removal order. (*Id.* at 5.) Undersigned further recommended that the dismissal be without prejudice and that Petitioner be granted leave to amend because the defect could be cured with allegations of other facts, *e.g.,* an appeal to the Circuit was pending. (*Id.* at 5-6.)

On July 9, 2026, Petitioner filed the Amended Petition. (Doc. 18.) On August 3,

2026, the Court adopted the Report and Recommendation without objection and dismissed the First Petition without prejudice. (Doc. 19.) The Court ordered Respondents to answer the Amended Petition no later than August 14, 2026, and allowed Petitioner to file a Reply within 10 days of service. (*Id.*) The Court also referred the matter to undersigned for a Report and Recommendation. (*Id.*)

On August 14, 2026, Respondents filed a timely Response to the Amended Petition. (Doc. 21.) On August 28, 2026, Petitioner filed a "Motion to Consider My Petition in Light of Recently Decided Cases" ("Motion to Consider") (Doc. 22). Respondents did not file a response to the Motion to Consider and undersigned will recommend that Court deem the motion to be a reply or alternatively to grant the motion.[1] (*Id.*)

Petitioner raises one ground to support the Amended Petition. (Doc. 18 at 5.) He asserts that his "continued detention in immigration custody violates the due process clause of the 5th Amendment." (*Id.*) He alleges that he timely filed a Petition for Review before the Ninth Circuit Court of Appeals which is pending. (*Id.* 5-6.)

In their Response, Respondents argue that as an "arriving alien" who has no documentation, Petitioner is properly detained under 8 U.S.C. § 1225(b)(2) and "may be detained through the completion of [his] removal proceedings without bond." (Doc. 21 at 2.) They assert that Petitioner has no constitutional right to release. (*Id.* at 3.)

Petitioner filed a notice of change of address on September 29, 2026, indicating he has been transferred from the San Luis Detention Center to the Otay Mesa Detention Center. (Doc. 23.)

## II. ANALYSIS

"The writ of habeas corpus remains available to every individual detained within

---

[1] In the Motion to Consider, Petitioner asks the Court to consider *Faizi v. Larose*, 831 F. Supp. 3d 993 (S.D. Cal. 2026) and *Mumbanga v. Mullin,* 831 F. Supp. 3d 1160 (S.D. Cal. 2026). If the Court deems the filing to be a motion and not a reply, the response was due September 11, 2026. LRCiv 7.2 (c). The Rules Governing Section 2254 Cases may be applied to habeas corpus petitions not brought under § 2254 and those rules permit the application of the Federal Rules of Civil Procedure. LRCiv 1(b), (12); *see also Bostic v. Carlson*, 884 F.2d 1267, 1270 n.1 (9th Cir. 1989), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016). The Court may deem the failure to file a response as consent to its granting. *See* LRCiv 7.2(i).

the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). Writ of habeas corpus relief extends to a person in federal custody if the petitioner can demonstrate he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Accordingly, federal courts have jurisdiction to grant writs of habeas corpus to noncitizens who are being unlawfully detained under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.") (citing *INS v. St. Cyr*, 533 U.S. 289, 301-303 (2001)); *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order") (citation omitted).

Although there has been no challenge to this Court's jurisdiction, federal courts have an independent obligation to examine their own jurisdiction. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). This Court has subject matter jurisdiction. *Padilla v. United States Immigration and Customs Enforcement,* No. 24-2801 __ F.4th___, 2026 WL 2822044, at *6-10 (9th Cir. Sept. 21, 2026) (holding that, while 8 U.S.C. § 1252 restricts the Court's subject matter jurisdiction relating to orders of removal, the restriction does not extend to the due process claims raised relating to detention). Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted by the district courts "within their respective jurisdictions." Pursuant to the "immediate custodian rule," the petition for a writ under 28 U.S.C. § 2241 must be filed in the district where the petitioner is detained, naming the immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426 (2004); *Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024). "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld*, 542 U.S. at 435. The issue raises jurisdictional concerns but only "in the sense that "the word 'jurisdiction' . . . is used the habeas statute, 28 U.SC.§ 2241, and not in the sense of subject matter jurisdiction of the District Court." *Id.* at 434, n.7.

Where, as here, a petitioner properly names his custodian in the first petition but is later transferred, the district court does not lose jurisdiction. *Rumsfeld*, 542 U.S. at 440-441 (citing *Ex Parte Endo*, 232 U.S. 283, 306-07 (1944)). "*Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld*, 542 U.S. at 441; *see also Acosta v. Doerer*, No. 5:24-cv-01630-SPG-SCC, 2024 WL 4800878, *at 3-4 (C.D. Cal. Oct. 24, 2024).[2]

In their Response to the First Petition, Respondents acknowledged that aliens held past their 90-day removal deadline for a total of more than six months are generally granted a bond hearing. *See* (Doc. 13 at 3); *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). They opposed relief because, at the time of their filing of the Response to the First Petition, Petitioner had been held for just six days into the 90-day removal period. (Doc. 13 at 2-3.)

Petitioner, however, is no longer being detained pending execution of the removal order. Instead, he is now detained as an applicant for admission pending the outcome of an asylum claim. 8 U.S.C. § 1255(b)(1)(B)(ii).

Insofar as Respondents argue that Petitioner is not statutorily entitled to a bond hearing, they are correct. Whether a noncitizen is statutorily entitled to a bond hearing is controlled by the type of removal procedure being employed. As recently explained by the Ninth Circuit Court of Appeals, "[r]emoval of noncitizens usually occurs through the procedures set forth in 8 U.S.C. § 1226a." *Padilla,* 2026 WL 2822044, at *4. "Generally, a noncitizen in regular removal proceedings may be arrested and detained pending a decision on their removal from the United States" but they may also request a bond hearing. *Id.*; *see also* 8 U.S.C. § 1226(a).

Under "certain circumstances" the government may remove an alien "through a different, markedly less procedurally robust pathway known as 'expedited removal.'"

[2] Accordingly, undersigned will recommend that Respondent Rivas, who is Warden of San Luis Detention Center, be substituted by Respondent Warden of Otay Mesa Detention Center.

*Padilla,* 2026 WL 2822044, at *4. This expedited removal procedure applies to "applicants for admission" defined as "an alien present in the United States who has not been admitted" following inspection by immigration authorities. *Id.*; 8 U.S.C. § 1225(a).

"As relevant here, applicants for admission fall into one of two categories, those covered by §1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez,* 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to "arriving aliens," to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of documentation, and to "certain other aliens "designated by the Attorney General in his discretion." *Id.*[3] "Arriving aliens" are those citizens attempting to come in at a port of entry. *Padilla,* 2026 WL 2822044, at *8 (citing 8 C.F.R. § 1.2).

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order." *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-12 (W.D. Wash. 2019). If, however, a noncitizen indicates an intention to apply for asylum or a fear of persecution, the inspecting immigration officer must refer the noncitizen for a credible fear interview with an immigration officer. *See* 8 U.S.C. § 1225(b)(1)(A)(ii). "If the officer determines . . . that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings,* 583 U.S. at 287. Like § 1225(b), § 1225(b)(2) also "requires detention for a removal hearing." *Id.* at 299.

"In sum, 1225(b)(1) and section 1225(b)(2) mandate detention throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings,* 583 U.S. at 302. Thus, Petitioner has no basis to assert a statutory basis for relief.

Some courts have rejected indefinite detention under § 1225(b) recognizing an

---

[3] Statutory power has since been delegated to the Secretary of the Department of Homeland Security. *Padilla,* 2026 WL 2822044, at *3, n.1 (citing 6 U.S.C. § 202(3) and 8 C.F.R. § 235.3(b)(1)(ii)).

implicit right to relief without undertaking a due process analysis. *See Avakian v. Cantu,* No. CV-26-00104-PHX-SHD, 2026 WL 746351, at *2 (D. Ariz. Mar. 17, 2026) (rejecting respondents' reliance on § 1225(b) and *Jennings* without addressing any constitutional considerations). Other courts employ a due process analysis with varying outcomes. *Compare Kaur v. Lyons,* No. CV-26-00217-PHX-KML (ASB), 2026 WL 967846, at *3-4 (D. Ariz. Mar. 24, 2026), *report and recommendation adopted*, 2026 WL 963792 (D. Ariz. Apr. 9, 2026) (adopting the recommendation that considered petitioner's due process rights despite being detained pursuant to § 1225(b)(2)) *with Mamedova v. Noem*, No. CV-25-04619-PHX-DWL, 2026 WL 1162282, at *2-3 (D. Ariz. Apr. 29, 2026) (concluding that "an arriving alien subject to statutorily mandated detention under §§1225(b)(1) or 1225(b)(2) does not have a constitutional right to a bond hearing.").

Accordingly, undersigned assumes the analysis does not end there and addresses Petitioner's due process rights.

**A. Entitlement to Due Process Claim**

The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Beginning with that fundamental principle, undersigned will now briefly address the ever-developing body of caselaw addressing the extent due process is available to immigrants detained pursuant to § 1225(b). *See Padilla,* 2026 WL 2822044, at *10-19; *Rodriguez v. Robbins ("Rodriguez III")*, 804 F.3d 1060, 1067 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 583 U.S. at 287 ("[I]n a series of decisions since 2001, the Supreme Court and [Ninth Circuit] have grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.").[4]

---

[4] *See Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1173-1176 (D. Ariz. 2020) for a comprehensive discussion of the background law and series of cases decided by the Ninth Circuit and Supreme Court.

"The application of the Due Process Clause is not contingent on citizenship status." *Padilla*, 2026 WL 2822044, at *11. Instead, whether its protection extends "to a noncitizen generally turns on whether that individual is 'within the territory of the United States.'" *Id.* at *12 (citing *Wong Wing v. United States,* 163 U.S. 228, 238 (1896)). "Noncitizens 'outside the sovereign territory of the United States' are generally not 'entitled to Fifth Amendment rights.'" *Id.* (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990)).

The United States Supreme Court applied these territorial rules and addressed whether applicants for admission are afforded due process rights in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). In *Thuraissigiam*, the Supreme Court rejected an arriving noncitizen's due process right to appeal the finding that he had no credible fear of persecution under the expedited removal provisions of 8 U.S.C. § 1225. 591 U.S. at 114. The Court found that the petitioner had not "entered" the country even though he was found 25 yards within the United States—expanding the doctrine known as "entry fiction" slightly beyond those who were detained immediately at the port of entry. *Id.* at 107. Because the petitioner was not in the country, held the *Thuraissigiam* Court, the petitioner was not entitled to due process protection and possessed "only those rights regarding admission that Congress has provided by statute." *Id.* at 140.

Importantly, the *Thuraissigiam* Court addressed only whether the alien had a due process right to admission because the petitioner did not assert a claim regarding judicial review of detention. 591 U.S. at 115, 117-118. The Ninth Circuit Court of Appeals in *Padilla* addressed whether due process claims which challenge detention survived the holding in *Thuraissigiam*. *Padilla,* 2026 WL 2822044, at *10-19. In *Padilla,* the government filed an interlocutory appeal of the district court's order denying its motion to dismiss a class action lawsuit seeking declaratory relief. 2026 WL 2822044, at *5-6. The class consisted of aliens, detained under section 1225(b)(1) pending the outcome their asylum proceedings. *Id.* at *2. The class asserted that their due process rights were violated by the failure to have been provided "prompt individualized custody hearings with

adequate safeguards." *Id.* at *5. The appeal presented two questions including, as relevant in this case, "whether the bond hearing class's due process challenge is barred by *Thuraissigiam.*" *Id.* at *3.

The *Padilla* court rejected the "entry fiction" as applied in that case because the class included those were not detained at the port of entry. *Padilla,* 2026 WL 2822044, at *13-14. The *Padilla* court held that the class could exercise their due process rights and found the conclusion to be "reinforced by the consideration that the class's due process claim concerns *detention*—not, as in *Thuraissigiam,* admission to the country." *Id.* at *16. To that end, the *Padilla* court recounted the long tradition affording heightened procedural protections to those challenging their arbitrary detention. *Id.* at *16-19. The court observed that "freedom from detention was understood as the foundation of all other rights," going as far back as the Magna Carta. *Id.* at *16-17. "The deep concern over arbitrary deprivations of liberty, and the sustained project of limiting the government's detention authority, carried through to the founding of our nation. 'The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty.'" *Id.* at 18 (quoting *Boumediene v. Bush,* 553 U.S. 723, 739 (2008)).

Some district courts have denied or dismissed habeas petitions outright for noncitizens challenging detention on due process grounds. *See, e.g., Chavez v. Noem,* 819 F. Supp. 3d 958, 962, No. CV-26-00323-PHX-MTL-JFM (D. Ariz. Feb. 9, 2026) ("These procedures represent the due process as provided by Congress in statute. Petitioner is entitled to nothing further under the Constitution.") (denying petitioner's § 2241 petition where petitioner "had been unlawfully present in the United States" since 2022); *Ibarra-Perez*, 468 F. Supp. 3d at 1177 (discussing the *Rodriquez* progeny and finding under the current Ninth Circuit precedent "it is constitutionally permissible to require Petitioner to remain in custody for the duration of his removal proceeding"); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) ("As far as [p]etitioner is concerned, whatever procedure Congress has authorized is sufficient due process.").

The majority of district courts in the Ninth Circuit have utilized a more "case-

specific," or "as-applied," approach to due process challenges from noncitizens disputing their prolonged detention in habeas corpus matters. *See Banda*, 385 F. Supp. 3d at 1117 ("[T]he Court joins the vast majority of other district courts to conclude that unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process."); *Gomez v. Doe*, No. CV 25-03255-PHX-JJT-CDB, 2025 WL 3269886, at *11 (D. Ariz. Nov. 3, 2025) (holding that "[t]he Fifth Amendment's Due Process Clause extends to all persons, regardless of status" and applying a balancing test to determine what procedural safeguards apply to a noncitizen challenging his detention under § 1225(b)(2)(A) pursuant to § 2241), *report and recommendation adopted sub nom. Gomez v. Unknown Party*, 2025 WL 3269055 (D. Ariz. Nov. 24, 2025); *see also Faizi,* 831 F. Supp. 3d at 1000-02; *Avakian v. Cantu,* 2026 WL 746351, at *2 (D. Ariz. March 17, 2026) (applying due process considerations to petitioner's prolonged detention under § 1225(b)); *Cong v. Noem*, No. 25-CV-3730-GPC-DEB, 2026 WL 76566, at *3 (S.D. Cal. Jan. 9, 2026) ("[M]ost courts have opted for an alternative, as-applied approach [in considering *Thuraissigiam*].") (collecting cases from the Ninth Circuit); *Sadeqi,* 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) ("This [c]ourt agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing.") (recognizing the distinction in applying *Thuraissigiam* between an arriving alien's due process rights to *admission*, circumscribed in *Thuraissigiam,* rather than limiting a petitioner's ability to challenge their *detention*) (collecting cases). Moreover, the Ninth Circuit expressed in the *Rodriguez* decision, following remand from the Supreme Court in *Jennings v. Rodriguez*,[5] that "[w]e have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

Undersigned recommends that the Court join the majority of courts in this Circuit

---

[5] 583 U.S. at 281.

in holding that a prolonged detention under § 1225(b) may give rise to due process issues. *See Cantu,* 2026 WL 746351, at *2 (rejecting respondents' objections that an arriving noncitizen may be detained through the completion of their removal proceedings, finding that the Supreme Court did not reach the constitutional analysis in its decision in *Jennings* and therefore did not preclude whether the denial of a bond hearing under § 1225(b) could violate the Due Process Clause). However, undersigned recognizes that the *Padilla* court did not rule on whether those detained at the port of entry may assert due process rights and prior to *Padilla,* there is the above-referenced split and ultimately undersigned defers to the assigned District Judge on the issue.

**B. *Banda* Test (Whether Petitioner's Detention Has Become Unreasonable)**

Courts apply a multifactor test to determine whether § 1225(b) detention has become unreasonable and therefore violative of due process. *See Banda*, 385 F. Supp. 3d at 1118. While courts differ slightly on the test applied, they are substantively the same – balancing petitioner's interest, government interest, and fault on either party. *See Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-01658-DMC-HC, 2026 WL 145644, at *6-9 (E.D. Cal. Jan. 20, 2026) (applying the *Lopez*[6] test to determining the reasonableness of a § 1225(b) detention); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) (applying the *Matthews v. Elridge*[7] test to assess whether prolonged detention has violated due process in 8 U.S.C. § 1226(c) context); *Faizi,* 833 F. Supp. 3d at 1002-03 (applying the *Matthews v. Elridge* test); *Yacoub v. Scott*, No. 2:26-CV-00783-TL, 2026 WL 1107805, at *3 (W.D. Wash. Apr. 23, 2026) (applying the *Banda* test to assess prolonged detention of noncitizen

---

[6] "To determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022).

[7] "[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976).

detained pursuant to § 1225(b)(1)(B)(ii)).

Undersigned will apply the *Banda* test based on recent Report and Recommendation adoptions to come out of the District of Arizona, but similarly notes that "[u]nder either test, Petitioner is entitled to a bond hearing." *See Avakian v. Rokosky,* No. CV-26-00104-PHX-SHD, slip op. at 21 (D. Ariz. Feb. 24, 2026), *report and recommendation adopted sub nom. Avakian v. Cantu*, 2026 WL 746351 (D. Ariz. Mar. 17, 2026); *see also Kaur,* 2026 WL 963792, at *1 (adopting the recommendation that applied *Banda* to assess petitioner's due process rights). Under *Banda*, courts balance the following factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." 385 F. Supp. 3d at 1118 (quoting *Jamal v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)).

Regarding the first factor, total length of detention, Petitioner has been in ICE detention since he arrived in the United States on August 6, 2024. (Doc. 18 at 5.) Thus, Petitioner has been detained for more than 25 months as of the date of this Report and Recommendation. (*See id.*) Federal courts have found that prolonged detention in a similar (and far shorter) range of time leans towards granting a bond hearing. *See Lopez*, 631 F. Supp. 3d at 879 ("Petitioner has been in immigration detention . . . approximately one year. District courts have found shorter lengths of detention pursuant to § 1226(c) without a bond hearing to be unreasonable."); *Amado v. United States Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citations omitted). Accordingly, Petitioner's 25-month detention weighs towards granting a bond hearing.

The second factor, likely duration of future detention, also weighs towards

Petitioner's position. An immigration judge ("IJ") held a merits hearing on July 14 and July 22, 2025. (Doc. 1-2 at 2-3.) In her August 15, 2025 written decision, the IJ granted Petitioner's application for asylum from Georgia and held in abeyance his applications for withholding of removal and protection under the CAT. (*Id.* at 2-16.) The IJ denied Petitioner's application for asylum from Russia, denied his application of withholding of removal from Russia, and denied withholding and deferral of removal from Russia under the CAT. (*Id.*) The IJ ordered Petitioner be removed to Russia or, alternatively, to Georgia. (*Id.* at 16.) Petitioner timely appealed to the Board of Immigration Appeals (Doc. 21 at Exh. A.) On May 26, 2026, the Board, the Board of Immigration Appeals dismissed the appeal. (*Id.*) On June 25, 2026, Petitioner filed a Petition for Review with the Ninth Circuit Court of Appeals that remains pending. (Doc. 21 at 2.)

Courts have found that pending administrative appeals and possible Ninth Circuit appeals can be "sufficiently lengthy" such that it favors Petitioner's ability to be heard. *See Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *7 (E.D. Cal. July 25, 2025) (citing *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)); *see also Banda*, 385 F. Supp. 3d at 1119 ("Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer.") (citing *Jamal*, 358 F. Supp. 3d 853, at 859); *see also Arechiga v. Archambeault*, No. 2:23-CV-00600-CDS-VCF, 2023 WL 5207589, at *4 (D. Nev. Aug. 11, 2023) ("It is anyone's guess how long it will take the BIA to reconsider [the] petition . . . or how long subsequent appeals of that decision might take.") Based on the record before this Court, it appears that Petitioner could face many more months or years of pending appeals. *See Banda*, 385 F. Supp. 3d at 1119. Accordingly, the potential length of detention during Petitioner's Ninth Circuit appeal process weighs towards granting Petitioner a bond hearing.

In the third factor, the Court considers the conditions of detention where the petitioner is detained. "The more that the conditions under which the noncitizen is being

held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal*, 358 F. Supp. 3d at 860).

Petitioner pleads that he "faces severe hardships while detained by ICE" with limited access to family or a support network. (Doc. 18, at 10).[8] Petitioner's allegations are consistent with this court's previous recognition that the San Luis Regional Detention Center is a medium-security facility operated by a private corrections company LaSalle Corrections. *See Cardin Alvarez v. Rivas*, No. CV 25-02943 PHX GMS (CDB), 2025 WL 2898389, at *19 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part sub nom. Alvarez v. Rivas*, No. CV-25-02943-PHX-GMS, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025). The facility houses immigration detainees awaiting trial, deportation, and immigrants serving sentences following a criminal conviction. *See id.* The facility allows no-contact visitation limited to one day per week, no electronic devices are allowed, all visitors are searched, legal mail is inspected and contact with legal counsel is limited. *Id.* at n.21. Similarly, other courts applying *Banda* to the Otay Mesa Detention Center "have recognized that the conditions at the Otay Mesa Detention Center are 'indistinguishable from penal confinement.'" *Zarei v. Larose*, 2026 WL 252585, at *6 (S.D. Cal. January 30, 2026) (quoting *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020) and citing *Amado v. United States v. Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025)). Thus, this third factor also weighs in favor granting relief, regardless of which detention facility is considered.

In the fourth and fifth factors, the Court considers delays in the removal proceedings caused by the detainee or the government. Here, the factors are likely neutral as applied to Petitioner, because there is no evidence in the record that either Petitioner or Respondent have caused any delay in the removal proceedings. (*See* Docs. 18, 21.)

Under the sixth factor, the Court looks at the likelihood that the removal proceedings will result in a final order of removal. Undersigned finds this factor is also neutral. *See Banda*, 385 F. Supp. 3d at 1118. While this Court cannot presume what the Ninth Circuit

[8] Additionally, Petitioner pleads that the continued detention "places petitioner's health at significant risk." (Doc. 18 at 6.)

Court of Appeals may decide on Petitioner's asylum claim, the record before this Court appears to indicate Petitioner has at least a viable case to plead. (*See* Doc. 1-2 at 10-12) (Petitioner was found to have demonstrated a credible fear of persecution or torture with respect to Russia).

Undersigned finally makes note of similarly situated petitioners. Based on the record before this Court, Petitioner made an appointment through the CBP. (Doc. 18 at 5.) Once he arrived at a U.S. port of entry on his appointment date and immediately surrendered himself to border officials claiming asylum. (*Id.*) Courts appear to take into consideration when petitioners enter the United States as an "arriving" noncitizen and immediately surrender to border patrol agents claiming asylum when determining whether to grant a bond hearing. *See Avakian v. Rokosky,* slip op. at 18 ("Logically, if due process affords criminal aliens under orders of removal a bond hearing if their detention becomes 'unreasonable,' notwithstanding that their detention is mandatory, then non-criminal aliens should also be afforded this due process protection."); *see also Sufiiarov v. Warden, Otay Mesa Det. Ctr.,* No. 25-CV-3265-LL-DDL, 2026 WL 26079, at *1, 5 (S.D. Cal. Jan. 5, 2026) (granting bond hearing to petitioner who arrived to the United States through an appointment seeking asylum); *Sadeqi,* 809 F. Supp. 3d at 1093 (granting bond hearing to petitioner who arrived to the United States via port of entry and immediately claimed asylum); *c.f. Chavez v. Noem,* 819 F. Supp. 3d at 961 ("[A] person who entered the United States illegally and is clearly and beyond a doubt not entitled to admission, is subject to mandatory detention") (denying a bond hearing for petitioner detained pursuant to § 1225(b)(2)(A) in part because they had been "unlawfully present in the United States" for almost three years prior to detention).

## III. CONCLUSION AND REMEDY

With three factors weighing in Petitioner's favor and three factors neutral, undersigned recommends that the District Judge find that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided with a bond hearing. *See Rodriguez v. Marin*, 909 F.3d at 256 (expressing "grave doubts" that

prolonged detention could not raise constitutional concerns).

Petitioner requests that this Court hold a hearing and determine whether there is clear and convincing evidence that he presents a risk of flight in or danger in the light of available alternatives. (Doc. 18 at 17.) He alternatively asks that the Court order the Respondents to schedule a hearing before an immigration judge and release him if not held within 30 days. (*Id.*) In most instances, the district courts are ordering that bond hearings be held as remedy in lieu of a hearing before the district court.

As a remedy most courts are ordering that Petitioner be given a bond hearing before a neutral adjudicator requiring the government prove flight risk and danger before a neutral adjudicator under the standards set forth by *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *See, e.g., Baishymyrov*, 2026 WL 145644, at *6-9; *Banda*, 385 F. Supp. 3d at 1121; *Arechiga*, 2023 WL 5207589, at *4-5; *Sufiiarov,* 2026 WL 26079, at *1, 5; *Sadeqi,* 809 F. Supp. 3d at 1093; *Lopez*, 631 F. Supp. 3d at 882-883; *Abdul-Samed,* 2025 WL 2099343, at *7. Some district courts, however, hold that ordering bond hearings, without additional protections, provides an inadequate remedy. *See, e.g., Faizi,* 831 F. Supp.3d at 1004. These courts are concerned that noncitizens may face immediate redetention if released on bond or the immigration courts are providing sham hearings. *Id.* ("Petitioner faces a continuing threat of redetention under the policies of the current executive regime");[9] *Mubanga,* 837 F. Supp. 3d at 1163 ("when faced with bond court orders to provide a new bond hearing, the government has, in many cases, conducted sham hearings . . .."); *Singh v. Valdez,* No. 26-cv-1109,-WJM 2026 WL 890240, at *5 (D. Colo. April 1 ,2026) (noting that there is "mounting evidence that the bond determination hearings" have "preordained outcomes"). These courts have responded to these concerns by conditionally enjoining redetention if the petitioner is released, ordering immediate release, or both. *See Faizi,* 831 F. Supp. 3d at 1005; *Mubanga,* 837 F. Supp. 3d at 1163.

Undersigned acknowledges the legitimacy of the cited district courts' concerns

[9] The *Faizi* court provided a non-exhaustive list of 25 cases from the Southern District of California where noncitizens were rearrested following release orders. *Faizi,* 831 F. Supp. 3d at 1004, n.3.

regarding the adequacy of bond hearings and threat of redetention. Immediate release, however, does not appear warranted as the record is too undeveloped.

Undersigned therefore recommends that the District Judge order that Petitioner be given a bond hearing before a neutral adjudicator that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *See, e.g., Banda*, 385 F. Supp. 3d at 1121; *Arechiga*, 2023 WL 5207589, at *4-5; *Sufiiarov,* 2026 WL 26079, at *1, 5; *Sadeqi,* 809 F. Supp. 3d at 1093; *Lopez*, 631 F. Supp. 3d at 882-883; *Abdul-Samed,* 2025 WL 2099343, at *7. Undersigned further recommends that the Court enjoin further redetention absent an appropriate bond hearing.

## RECOMMENDATION

Based on the foregoing,

**IT IS THEREFORE RECOMMENDED** that the (Amended) Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 18) be **granted in part and denied in part** as follows:

1. Undersigned recommends that the Court **grant** Petitioner's request for a bond hearing and order that, within **thirty (30) days** of the date the Petition being granted, Petitioner be afforded a bond hearing before a neutral adjudicator.
2. Undersigned recommends that the Court order that, if Petitioner is released, Respondents may not redetain him during the pendency of his removal proceedings without first providing an individualized bond hearing before a neutral adjudicator.
3. It is recommended all other forms of relief in the Petition, including an order directing Petitioner's immediate release, be **denied**.
4. Undersigned recommends that Respondent Rivas be substituted by Respondent Warden of Otay Mesa Detention Center.
5. Undersigned recommends deeming Petitioner's "Motion to Consider My Petition in Light of Recently Decided Cases" (Doc. 22) to be a reply in support of his Amended Petition. In the alternative, undersigned recommends that the

Motion (Doc. 22) be granted.

**EFFECT OF RECOMMENDATION**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 1st day of October, 2026.



Honorable Alison S. Bachus
United States Magistrate Judge